# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MIKE SANTOS,
      Plaintiff,

      vs.

GARY MOHR, et al.,
      Defendants.

Case No. 1:15-cv-442

Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, brings this civil rights action under 42 U.S.C. § 1983 against numerous state correctional officials and employees. (*See* Doc. 1). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or

law. *Neitzke,* 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

2

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this § 1983 action against the following named defendants: Gary Mohr, the Director of the Ohio Department of Rehabilitation and Correction (ODRC); Dr. John R. Desmarais, ODRC's medical director; Stuart Hudson, ODRC's medical service administrator; Dr. Andrew Eddy, ODRC's chief medical officer; Mona Parks, ODRC's assistant chief medical inspector; SOCF's Warden, Donald Morgan; SOCF's Deputy Warden of Special Services, Anthony Cadogan; SOCF's health care administrator, Roseanna Clagg; Dr. Faisal V. Ahmed, an SOCF physician; SOCF's institution inspector, Linnea Mahlman; Joanna E. Saul, Director of the Ohio General Assembly's Correctional Institution Inspection Committee (CIIC); CIIC staff members Gregory T. Geisler and Adam C. Jackson; Richard A. Whitehouse, Executive Director of the State Medical Board of Ohio; and Betsy Houchen, Executive Director of the Ohio Board of Nursing. (Doc. 1, at PAGEID#: 50-51).

In the complaint, plaintiff alleges that in October 2010, when he was incarcerated at Trumbull Correctional Institution, he began to experience "back pains," which "persisted and intensified" and continued after he was transferred to Mansfield Correctional Institution (ManCI)

3

in August 2011. (*Id.*, at PAGEID#: 52). Although he initially responded to a combination of medications provided at ManCI, the medications eventually wore off and were discontinued on September 27, 2011. (*Id.,* at PAGEID#: 52, 55). Thereafter, he complained of "severe pain" and repeatedly requested to be seen by specialists, but was given "no stronger pain medication" than ibuprofen and was not referred to a specialist. (*Id.*, at PAGEID#: 55).

In December 2011, plaintiff was transferred to SOCF, "where his medical problems continued." (*Id.*). He was seen on December 14, 2011 by defendant Dr. Ahmed, but "did not receive any medical attention" despite complaints of "immense pain (stomach, back, ear & chest)." (*Id.*). Plaintiff states that he then "filed an informal complaint (one of many) against Dr. Ahmed, who to date continues to refuse plaintiff adequate medical care." (*Id.*). Specifically, plaintiff alleges:

> As a result of Dr. Ahmed's deliberate indifference to plaintiff's medical needs, plaintiff now suffers from: chronic anemia, chronic constipation, chronic thrombosed hemorrhoids, chronic anal fissures, chronic acid reflux, and peptic ulcer disease, which no tests were done to rule out the diagnosis. Plaintiff's medical needs relating to those conditions were not met, which resulted in blood loss (possible bleeding in digestive tract); malnutrition from poor digestion; poor appetite and weight loss; fatigue and weakness; nausea; lightheadedness; irritability and confusion; headaches; abdominal pain and swelling; fluid in the abdominal cavity; indigestion; excessive belching; regurgitation of stomach contents; inability to pass stool; rectal bleeding . . .; rectal pain; fluid retainment; muscle, joint and back pain.

(*Id.*, at PAGEID#: 55-56). Plaintiff claims that despite his "on going pains and worsening conditions, Dr. Ahmed refuses to provide pain medication for plaintiff or refer him to meet with specialists." (*Id.*, at PAGEID#: 56). Plaintiff avers that he was admitted to the prison's medical unit three times "for excessive rectal bleeding and seizure," and that "[b]ecause his anal fissures did not properly heal, [his] rectum comes out during bowel movements." (*Id.*). Plaintiff refers to

4

attached "relevant pages of [his] medical files and complaints" as showing his "medical needs continue to go unmet." (*Id.*). He also claims that defendants Roseanna Clagg and Anthony Cadogan have been deliberately indifferent to his serious medical needs because they have failed to "properly train and manage their staff" and have taken "no action to prevent or remedy the wrongs" brought to their attention by plaintiff in "numerous complaints . . . (15 alone at SOCF)." (*Id.*, at PAGEID#: 56-57).

With respect to defendant Linnea Mahlman, plaintiff asserts that he submitted a "kite" to Mahlman on August 28, 2014 requesting "grievance forms for complaints dated: August 18, 2014 and August 22, 2014" against medical staff. On September 3, 2014, Mahlman refused to provide the requested grievance forms to plaintiff, stating that "she will no longer continue to address his medical issues." (*Id.*, at PAGEID#: 57). Plaintiff also claims that Mahlman refused to provide him with a list of "names of the appropriate individuals who are responsible for his health care" and caused a delay in his appeal from the denial of a grievance in March 2015 by providing him with the wrong appeal form. (*Id.*, at PAGEID#: 57-58).

Plaintiff further alleges that he appealed "all denied grievances" to defendant Dr. Andrew Eddy, who is the ODRC official with "sole responsibility for all matters involving purely clinical judgment." (*Id.*, at PAGEID#: 58). Instead, the appeals were handled by defendant Mona Parks, a registered nurse, who acted outside the scope of her authority when she denied all of his appeals. (*Id.*, at PAGEID#: 58-59).

Plaintiff claims that his mother and sister made several calls to defendant Donald Morgan to voice their concerns about plaintiff's health and lack of medical care at SOCF. (*Id.*, at PAGEID#: 59). Morgan told them that "plaintiff's medical needs were being met." (*Id.*).

5

Plaintiff's mother and sister also made numerous calls to the ODRC's medical department and defendant Gary Mohr to voice the same concerns that had been relayed to SOCF's Warden. (*Id.*). The ODRC defendants "assured plaintiff's mother and sister that plaintiff's medical needs" would be investigated. (*Id.*, at PAGEID#: 59-60).

On December 6, 2012 and September 23, 2013, plaintiff wrote letters to defendant Joanna Saul, CIIC's Executive Director, describing his health problems and "deteriorating condition," as well as his alleged "abuse" by SOCF and ODRC medical staff. (*Id.*, at PAGEID#: 60). Defendant Gregory Geisler responded to plaintiff's initial letter by letter dated December 12, 2012, and defendant Adam Jackson responded to the second missive by letter dated October 13, 2013. (*Id.*, at PAGEID#: 60, 191-93). The two response letters were attached and referred to in the complaint as being to "no avail." (*Id.*).

Plaintiff states that between July 2012 and November 2014, he pursued several other avenues to obtain relief for his unmet medical needs. (*Id.*, at PAGEID#: 60). In July 2012, he filed a complaint against Mona Parks with the Ohio Board of Nursing. (*Id.*). In November 2014, he wrote a letter to defendant Betty Houchen inquiring about the status of that complaint. (*Id.*). In December 2014, he received a letter in response to his inquiry. (*Id.*, at PAGEID#: 60-61). In the letter, which is attached as an exhibit to the complaint, plaintiff was informed that his complaint was forwarded on August 30, 2012 to the ODRC's deputy director of medical services for review and investigation and that the Board of Nursing had "not received any identification of a nurse having acted improperly." (*Id.*, at PAGEID#: 61, 198).

In August 2012, plaintiff filed a complaint against Dr. Ahmed with the State Medical Board of Ohio. (*Id.*, at PAGEID#: 61). Plaintiff states that when he did not receive a response to

6

the complaint, he wrote defendant Richard Whitehouse in November 2014 and was informed at that time that his complaint was forwarded on March 8, 2013 to defendant Dr. John Desmarais of the ODRC for review. (*Id.*).[1] Plaintiff claims that neither Dr. Desmarais nor the State Medical Board took any action to resolve his complaint. He also asserts that his mother and sister contacted defendant Whitehouse several times by phone to voice their concerns about plaintiff's medical care at SOCF and that Whitehouse assured them the "medical situation would be looked into." (*Id.*). Plaintiff avers that to date, he has "not received adequate medical care . . . and is still under the care of Dr. Ahmed." (*Id.*).

Finally, on November 28, 2014, plaintiff wrote to defendant Stuart Hudson of the ODRC inquiring about the status of the complaint against Dr. Ahmed that he had originally submitted to the State Medical Board of Ohio. (*Id.*, at PAGEID#: 62). In May 2015, he received an inter-office communication dated February 9, 2015 that he had not followed "the proper guidelines . . . when corresponding with the chief inspector's office." (*Id.*).

As relief, plaintiff requests $900,000 in both compensatory and punitive damages from each of the named defendants. (*Id.*, at PAGEID#: 53). He also seeks declaratory relief and injunctive relief in the form of an order requiring the defendants "to schedule plaintiff immediately for rectal surgery to cure his thrombosed hemorrhoids and anal fissures; order diagnostic tests to try to identify the cause of plaintiff's conditions; refer plaintiff to specialists, who are better qualified to meet his medical needs; afford plaintiff an appropriate diet for his weight loss and malnutrition . . .; and prescribe plaintiff effective pain medication and any and all

_____

[1] It is noted, however, that the exhibits attached and referred to by plaintiff in his complaint are inconsistent with the complaint's allegations because they show that he was informed by letter dated March 8, 2013 from the State Medical Board of Ohio that his complaint had been forwarded to Dr. Desmarais for review. (*See* Doc. 1, at PAGEID#: 201).

7

medication further necessary to give plaintiff relief." (*Id.*).

Plaintiff's complaint is subject to dismissal at the screening stage for failure to state a claim upon which relief may be granted by this Court. In order to state a viable § 1983 claim, plaintiff must allege facts showing that he was deprived of "a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). Here, plaintiff's factual allegations do not give rise to a plausible claim of federal constitutional dimension against any of the named defendants.

As a threshold matter, to the extent plaintiff seeks to bring claims against any of the defendants based on incidents that occurred over two years prior to the filing of the instant action on June 23, 2015,[2] the claims are time-barred. Plaintiff's civil rights complaint is governed by Ohio's two-year statute of limitations applicable to personal injury claims. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein) (holding that the statute of limitations governing § 1983 actions "is that which the State provides for personal-injury torts"); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012) ("the settled practice . . . to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so" is applicable "to § 1983 actions and to *Bivens* actions because

---

[2] It is well-settled that the filing date for pleadings submitted by *pro se* prisoners is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Therefore, although the complaint was stamped as "filed" on July 1, 2015, the undersigned presumes in plaintiff's favor that the filing date for statute of limitations purposes is June 23, 2015, the date plaintiff executed his complaint and accompanying *in forma pauperis* application. (*See* Doc. 1, at PAGEID#: 53; Doc. 2, at PAGEID#: 70).

neither the Federal Constitution nor the § 1983 statute provides timeliness rules governing
implied damages") (internal citation and quotation marks omitted). Although the statute of
limitations is an affirmative defense, when it appears clear on initial screening of the complaint
that the action is time-barred, the complaint may be dismissed for failure to state a claim upon
which relief may be granted. *See Jones v. Bock,* 549 U.S. 199, 215 (2007). *Cf. Fraley v. Ohio
Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1-2 (6th Cir. Oct. 30, 1998) (holding that the
district court "properly dismissed" the *pro se* plaintiff's § 1983 civil rights claims under 28
U.S.C. § 1915(e)(2)(B) because the complaint was filed years after Ohio's two-year statute of
limitations had expired); *Anson v. Corr. Corp. Of America,* No. 4:12cv357, 2012 WL 2862882,
at *2-3 (N.D. Ohio July 11, 2012) (in *sua sponte* dismissing complaint under 28 U.S.C. §
1915(e), the court reasoned in part that the plaintiff's *Bivens* claims asserted "six years after the
events upon which they are based occurred" were time-barred under Ohio's two-year statute of
limitations for bodily injury), *aff'd,* 529 F. App'x 558 (6th Cir. 2013).

Here, it is clear from the face of the complaint that plaintiff's allegations challenging the
adequacy of his medical care at SOCF, as well as the handling of his complaints and grievances,
prior to June 23, 2013 are time-barred. Therefore, any such claims are subject to dismissal at the
screening stage. (*See* Doc. 1, ¶¶ 4-6 & Exs. A-F, at PAGEID#: 52, 55-56, 78-110).
Furthermore, because the only allegations against defendant Geisler stem from a letter that he
sent to plaintiff on December 12, 2012 (*see id.*, ¶ 12 & Ex. Q, at PAGEID#: 60, 191-92), Geisler
is subject to dismissal as a named defendant on statute of limitations grounds.

Second, plaintiff's allegations against defendant Mahlman fail to give rise to an
actionable § 1983 claim. Plaintiff has not alleged any facts even remotely suggesting that

Mahlman's refusal to provide him with the names of medical staff members deprived him of a federal constitutional or statutory right. Moreover, plaintiff's remaining allegations against Mahlman regarding the handling of prison grievance matters fail to implicate federal constitutional concerns because plaintiff has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000). For the same reason, plaintiff has failed to state a

claim against defendants Eddy and Parks for their alleged misconduct in the handling of his grievance appeals.

Third, plaintiff has failed to state a claim for relief against the following named defendants in their supervisory capacity over SOCF's medical staff and, more specifically, Dr. Ahmed: SOCF's Warden, Donald Morgan; ODRC Director, Gary Mohr; ODRC medical director, Dr. John R. Desmarais; ODRC chief medical officer, Dr. Andrew Eddy; ODRC assistant chief medical inspector, Mona Parks; ODRC medical service administrator, Stuart Hudson; SOCF Deputy Warden, Anthony Cadogan, SOCF health care administrator, Roseanna Clagg; CIIC Director, Joanna E. Saul; CIIC staff members, Gregory Geisler and Adam C. Jackson; Executive Director of the State Medical Board of Ohio, Richard A. Whitehouse; and Executive Director of the Ohio Board of Nursing, Betsy Houchen. Prison officials or other state supervisory officials, whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior,'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803

11

(6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers").

Here, plaintiff has alleged no facts to suggest that any of the above-listed supervisory defendants were directly involved or knowingly acquiesced in unconstitutional conduct by SOCF's medical staff in the treatment of plaintiff's medical conditions. Plaintiff's only allegations against these defendants are based on their denial of plaintiff's administrative grievances and/or failure to supervise and train SOCF's medical staff, investigate plaintiff's complaints, or correct the complained-about behavior. Those allegations are simply insufficient to state a plausible claim under § 1983 against the supervisory defendants. *Cf. Wingo*, 499 F. App'x at 455 (claim against supervisory state officials for failure to enforce prison policies and failure to investigate the unprofessional conduct of correctional officers does not state a plausible claim under § 1983 absent allegations that those officials actively participated in the alleged misconduct); *Easley v. Judd*, No. 1:14cv100, 2014 WL 897166, at *11 (S.D. Ohio Mar. 6, 2014) (Bowman, M.J.) (recommending screening dismissal of claim against a defendant for failing to investigate a complaint to the Ohio State Medical Board, as well as claims against ODRC officials "on the bases of their supervisory roles over Dr. Ahmed and/or their failure to correct the alleged constitutional violation"), *adopted*, 2014 WL 1660690 (S.D. Ohio Apr. 25, 2014) (Dlott, J.); *Koch v. Cnty. of Franklin*, No. 2:08cv1127, 2010 WL 2386352, at *10-11 (S.D. Ohio June 10, 2010) (Frost, J.) ("a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it") (internal citations and

quotations omitted); *see also Shehee*, 199 F.3d at 300.

Finally, upon review of the entire complaint, which includes the attached exhibits referred to by plaintiff in the substance of the complaint,[3] the undersigned concludes that plaintiff has failed to state an actionable claim under § 1983 against Dr. Ahmed or any other named defendant to the extent that he alleges they have been deliberately indifferent to his medical needs. In order to state a claim of cruel and unusual punishment under the Eighth Amendment based on inadequate medical care, the plaintiff must allege facts indicating that (1) he had a "serious medical need," which is something "more than 'mere discomfort or inconvenience,'" and (2) the defendants knew of and disregarded an excessive risk to the inmate's health or safety. *Flanory v. Bonn*, 604 F.3d 249, 253-54 (6th Cir. 2010) (quoting *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)). The standard has both an objective and subjective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the objective component, a medical need is "serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." *Id.* at 897 (internal citation and quotation marks omitted) (emphasis in original). In *Blackmore*, the Sixth Circuit addressed the standards to use when evaluating claims involving a delay in receiving medical treatment. The court distinguished "claims involving minor maladies or non-obvious complaints," which require the presentation of "verifying medical evidence" about the detrimental effect of the delay, from

---

[3] A court may consider exhibits attached to the complaint or motion to dismiss under certain circumstances. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)). Although, generally, a court may not consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).

cases where "a constitutional claim for immediate or emergency medical attention" is established

based on the "obviousness" of the prisoner's medical needs involving "life-threatening

conditions or situations where it is apparent that delay would detrimentally exacerbate the

medical problem." *See id.* at 897-98 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d

1176, 1187-88 (11th Cir. 1994)).

Under the subjective component, the plaintiff must allege facts showing that prison

officials had a "sufficiently culpable state of mind" in denying immediate medical care. *Id.* at

895. "Allegations of medical malpractice or negligent diagnosis or treatment fail to state an

Eighth Amendment claim." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976): *see also Flanory*,

604 F.3d at 254 (quoting *Farmer*, 511 U.S. at 835) ("Deliberate indifference 'entails something

more than mere negligence.'"). Instead, as the Supreme Court held in *Farmer*, to state a viable

Eighth Amendment claim, the plaintiff must allege facts showing that prison officials both were

"aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists" and also drew that inference. *Farmer*, 511 U.S. at 837; *see also Blackmore*, 390 F.3d at

896. "Knowledge of the asserted serious needs or of circumstances clearly indicating the

existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390

F.3d at 896 (quoting *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir.

1994)). Furthermore, as the Sixth Circuit has explained, "[w]here a prisoner has received some

medical attention and the dispute is over the adequacy of the treatment, federal courts are

generally reluctant to second guess medical judgments and to constitutionalize claims which

sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, it is clear from plaintiff's pleadings that plaintiff has not been refused treatment

for his medical conditions at SOCF and that his claim, therefore, is based on alleged

inadequacies in the medical care that he has received.  Specifically, plaintiff has provided a

record of rulings on various grievances he filed pertaining to the relevant two-year period,

which shows that he was seen by Dr. Ahmed and received medical care on numerous

occasions, which included prescriptions for various medications (*i.e.*, Lactulose, iron, folic

acid, Feosol, TUCKS, Vitamin D with Calcium, Pepcid, suppositories) to treat his anemia,

gastrointestinal issues and other health-related complaints.  (*See* Doc. 1, at PAGEID#:  116-18,

120-21, 125, 129, 138, 142, 144, 150-51, 159, 161-64, 168).  In addition, follow-up visits were

ordered with continued monitoring of plaintiff's anemia and anal fissure by the Chronic Care

Center, plaintiff's weight was monitored, and blood tests, rectal examinations, a barium enema

and even a colonoscopy (with biopsies) were performed to ensure that plaintiff's health was

stable and did not require any further medical intervention.  (*See id.*).[4]  Plaintiff has not

disputed the veracity of those facts as set forth in the rulings on his various grievances.  Rather,

it appears that the crux of plaintiff's complaint stems from his dispute with Dr. Ahmed's

decision to follow a "conservative" treatment plan that did not include surgery or referral to a

"specialist" with respect to his confirmed anemia and gastrointestinal health issues, as well as

Dr. Ahmed's determination that some of his other health-related complaints posed no concerns.

      Plaintiff's complaint, when viewed in its entirety, does not satisfy the subjective

---

[4] It also appears from the record that a "shake down" of plaintiff's cell, which was ordered at one point to determine if plaintiff was taking his prescribed medications, revealed that plaintiff was not following the treatment plan. (*See* Doc. 1, at PAGEID#: 121). Furthermore, in a three-month period, plaintiff had purchased items from the commissary (*i.e.*, soft drinks, bottles of hot sauce, 13 packages of "hot summer sausage/pepperoni," 49 packages of "BBQ chips/nacho cheese chips/cheese crackers/jalapeno crunchy corn chips/sour cream & onion chips," and 29 packages of "peanut butter cookies/zippy cakes/strawberry-cheese pastry/fudge round cookies"), which were "not appropriate for someone who is complaining of or being treated for peptic ulcer disease." (*Id.*). Those types of purchases continued after plaintiff was instructed that they would irritate his "GI tract" and were "contraindicated" given his "complaint of gastric concerns." (*Id.*, at PAGEID#: 129, 162).

component of an Eighth Amendment claim of deliberate indifference by Dr. Ahmed or any other named defendant to his serious medical needs. At most, plaintiff has alleged a claim of medical malpractice or negligence in his diagnosis and treatment at SOCF, which fails to implicate constitutional concerns. Therefore, he has not stated a viable claim under § 1983 against Dr. Ahmed or any other named defendant in challenging the adequacy of his medical care at SOCF.

Accordingly, in sum, the complaint should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because plaintiff has failed to state a claim upon which relief may be granted against any of the named defendants.

## IT IS THEREFORE RECOMMENDED THAT:

1. The plaintiff's complaint (Doc. 1) be **DISMISSED** with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis. See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 7/28/15

Karen L. Litkovitz
United States Magistrate Judge

16

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MIKE SANTOS,
     Plaintiff,

     vs.

GARY MOHR, et al.,
     Defendants.

Case No. 1:15-cv-442

Beckwith, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc